***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Theresa B. Stephenson and the briefs and arguments on appeal. The Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in the Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 11 February 1999, an employment relationship existed between the plaintiff-employee and defendant-employer.
3. North Carolina Farm Bureau Mutual Insurance Company is the carrier on the risk.
4. On 11 February 1999 the plaintiff's average weekly wage was $303.18, yielding a compensation rate of $202.12 per week.
5. The plaintiff received $500.04 in temporary total disability benefits from 26 February 1999 through 18 March 1999, prior to defendant's denial of the claim.
6. The plaintiff's medicals regarding this claim are admitted into evidence as Stipulated Exhibit # 2 and include the following providers:
a.) Highsmith Rainey Memorial Hospital;
b.) U.S. Healthworks of NC;
c.) Primary Rehabilitation Center;
d.) Tri-County Community Health Center;
e.) Cape Fear Neurology Associates;
f.) Physicians' Total Rehabilitation;
g.) Carolina Neurosurgical Services;
h.) Cape Fear Valley Medical Center (10/15/99);
i.) Cape Fear Valley Medical Center (10/20/99);
j.) Cape Fear Valley Medical Center (02/28/00);
k.) CFVMC-Pain Management Center;
l.) CFVMC-Physical Therapy;
m.) Cape Fear Valley Medical Center (09/18/00);
n.) Eastern Carolina Pain Management; and
o.) Betsy Johnson Memorial Hospital.
7. The following Industrial Commission Forms are admitted into evidence as Stipulated Exhibit #3:18, 19, 63, 61, 28B, 28 rev., 33 and 33R.
8. The plaintiff's personnel records from defendant-employer, including time sheets and wage records, are admitted into evidence as Stipulated Exhibit # 4.
9. The plaintiff's Employment Security Commission records are admitted into evidence as Stipulated Exhibit # 5.
10. The plaintiff's recorded statement is admitted into evidence as Stipulated Exhibit # 6.
11. The issues to be determined are whether the plaintiff sustained a compensable injury arising out of and in the course of his employment with defendant-employer, and, if so, what, if any, benefits is he entitled.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. In February, 1999 the plaintiff was a 25 year-old male employed by defendant-employer as a landscaper. The plaintiff had been employed in this capacity since February 1996.
2. On 5 February 1999 the plaintiff was changing a tire on a backhoe at work with two co-employees. The plaintiff pulled up on one side of a large star wrench while the other two employees pushed down on the other side of the wrench. The lug nut broke loose jerking the plaintiff up. The plaintiff felt stiffness in his back and then began to experience increasing pain in his lower back and right hip. The plaintiff did not file a claim with respect to this incident.
3. On 11 February 1999 the plaintiff was performing his usual duties as a landscaper. That morning the plaintiff was driving a dump truck in the course of his employment when he felt a pop in his back as he exited the vehicle.
4. The plaintiff reported both instances with his back to James Berry, owner of defendant-employer. On 12 February 1999 the plaintiff did not work due to his back pain. In addition to defendant-employer, the plaintiff told his wife about his work-related injuries, as well as his mother, sister, and mother-in-law.
5. The plaintiff spoke with two friends, Robert Hair and William Knowles, concerning how he had injured his back. The plaintiff informed both he had injured his back at work on 5 February 1999 and 11 February 1999. The plaintiff did not have any previous back problems prior to these dates.
6. The plaintiff sought treatment from Highsmith Rainey Hospital Emergency room on 13 February 1999. At that time he experienced sharp back pain with radiation into the right hip, knee, and lower leg. The plaintiff's wife gave the history to the hospital and was unsure of exactly how the plaintiff hurt his back, saying, "thinks happened at work." The records note the insurance information given by the plaintiff and reflect the method of payment as "workers comp. misc." The plaintiff was diagnosed with back pain and sciatica.
7. On 15 February 1999 the plaintiff was seen at U.S. Healthworks complaining of lower back pain after changing a tire and breaking lug nuts loose. The records reflect that the plaintiff hurt his back on 11 February 1999. At that time the plaintiff had an acute muscle spasm in his lower back with the spasm greater in the right than the left; and also had radicular pain. The plaintiff was advised to stay out of work 15 February 1999 through 19 February 1999.
8. The plaintiff was seen again by U.S. Healthworks on 19 February 1999. The plaintiff had low back pain including a spasm at T12-L1 with pain on straight leg raises. The plaintiff was diagnosed with acute lower back pain with radiculopathy and referred to physical therapy and a MRI. The plaintiff was to remain out of work through 24 February 1999.
9. The plaintiff was seen by U.S. Healthworks on 24 February 1999 with no improvement in his symptoms. The plaintiff was directed to continue physical therapy and remain out-of-work until 3 March 1999. On 3 March 1999 the plaintiff was awaiting approval of a MRI and to continue therapy. The plaintiff was released to return to work effective 3 March 1999 on light duty with no lifting greater than 10 pounds, no prolonged standing or walking, no repetitive bending or stooping, and no kneeling, squatting, climbing, pushing, or pulling. The plaintiff did not return to work, and received temporary total disability benefits through 18 March 1999.
10. The plaintiff continued follow-up visits with U.S. Healthworks on 10 March 1999, 17 March 1999, 24 March 1999, 31 March 1999, and 14 April 1999. The plaintiff's condition did not substantially improve and his restrictions remained the same. The plaintiff was unable to return to work after temporary total disability payments ceased due to his severe pain.
11. The plaintiff's claim was denied on 1 April 1999 and the plaintiff was discharged from care at U.S. Healthworks due to denial of the claim.
12. The plaintiff sought assistance from the Department of Human Resources in order to obtain an MRI. The plaintiff followed up with Tri-County Community Health Center on 2 June 1999 where he provided a history of the injury of 5 February 1999 while changing a tire and a second injury a week later.
13. The plaintiff underwent an MRI on 5 June 1999 at Betsy Johnson Regional Hospital. The MRI revealed vertebral end plate irregularity of Schmorl's nodes and significant degenerative changes at L1-2 through L4-5, significant spinal stenosis at L4-5 with a posterior annular tear and small central protrusion, mild spinal stenosis at L3-4 and minimal ventral ridging at L1- and L2-3, and minimal central protrusion at L5-S1 with no significant stenosis.
14. The plaintiff was referred to Dr. Martin Chipman, a neurologist. On 15 June 1999 the plaintiff gave a history of an injury while changing a tire on 5 February 1999 and a "pop" in his back on 11 February 1999 while coming off his truck. Dr. Chipman referred the plaintiff for EMG studies and pool therapy, and diagnosed a multiple level radiculopathy, particularly at L4-5. When the plaintiff did not improve with conservative treatment, Dr. Chipman referred the plaintiff to a neurosurgeon.
15. The plaintiff saw Dr. Kevin Vaught, a neurosurgeon, on 8 August 1999. Dr. Vaught diagnosed severe lumbar strain and severe spinal stenosis at L4 with clear neurogenic claudication symptoms and recommended a complete facet sparring decompression of L4.
16. On 15 October 1999 the plaintiff underwent a complete L4 decompressive laminectomy and medial facetectomy. Following surgery the plaintiff continued to experience significant back and leg pain. Dr. Vaught prescribed physical therapy, which the plaintiff did from 31 January 2000 until 21 February 2000. The plaintiff was discharged from physical therapy due to a lack of improvement. Dr. Vaught then referred the plaintiff to Pain Management Clinic.
17. The plaintiff saw Dr. Oswalt at the Pain Management Clinic on 7 March 2000. The plaintiff's chief complaints were back and right lower extremity pain. Dr. Oswalt noted the plaintiff suffered from chronic pain secondary to post laminectomy syndrome of the lumbar spine, piriformis muscle syndrome of the right lower extremity, and bilateral L4-L5 facet joint syndrome.
18. The plaintiff underwent facet injections and caudal steroid injections, but these did not provide any pain relief. The plaintiff tried various medications and was evaluated psychologically due to depression.
19. The plaintiff continued treatment with the pain clinic until 6 June 2001. During this time the plaintiff's condition did not improve. The plaintiff was referred to Dr. Toni Harris for evaluation at her pain clinic on 27 July 2001, after a referral by Carolina Neurological. Dr. Harris recommends the plaintiff be seen at the inpatient program at Duke along with psychiatric care.
20. The greater weight of the evidence is that the plaintiff sustained a specific traumatic incident at work on 11 February 1999 that resulted in injury to his back and being unable to work or earn wages from 12 February 1999 and continuing.
21. The plaintiff's psychological problems are related to the pain caused by the 11 February 1999 specific traumatic incident. The plaintiff's psychological problems are causally related to the 11 February 1999 specific traumatic incident.
22. The plaintiff is not at maximum medical improvement and would benefit from an inpatient pain clinic with psychiatric treatment insofar as the treatment would relate to the 11 February 1999 specific traumatic incident.
23. Plaintiff continued to work and was not disabled following the 5 February 1999 incident. Plaintiff's inability to work began after the 11 February 1999 incident.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 11 February 1999 the plaintiff sustained a specific traumatic incident arising out of and in the course of his employment with defendant-employer. G.S. § 97-2(6).
2. As a result of the plaintiff's injury on 11 February 1999, the plaintiff is entitled to temporary total disability from 12 February 1999 and continuing until further Order of the Commission. The defendants are entitled to a credit in the amount of $500.04 for temporary total disability previously paid. Those amounts which have accrued shall be payable in a lump sum. G.S. § 97-29.
3. The plaintiff is entitled to have the defendants provide all medical treatment, including psychological care, arising from the 11 February 1999 specific traumatic incident to the extent it tends to affect a cure, give relief or lessen the plaintiff's period of disability. G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned makes the following:
 AWARD
1. Subject to a reasonable attorney fee herein approved, the defendants shall pay to the plaintiff $202.12 per week from 12 February 1999 and continuing until further Order of the Commission, subject to a credit for the defendants in the amount of $500.04. Those amounts which have accrued shall be payable in a lump sum.
2. The defendants shall pay all medical expenses, including psychological treatment, incurred by the plaintiff as a result of his compensable injuries on 5 February 1999 and 11 February 1999, for so long as such examinations, evaluations and treatment may be reasonably necessary to affect a cure, give relief or lessen the plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded the plaintiff in Paragraph 1 of this AWARD is approved for the plaintiff's counsel and shall be deducted from those amounts due the plaintiff and payable directly to the plaintiff's counsel.
4. The defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER